IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff*,<br><br> v.<br><br>MONTEL SMITH,<br><br>    *Defendant*. | Criminal No. 2:23-cr-0008<br><br>Hon. William S. Stickman IV |

## **MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

  Defendant Montel Smith ("Smith") filed a Motion to Suppress Evidence Seized Under Warrant Issued Without Probable Cause (ECF No. 45) and a Motion to Suppress Evidence Seized Beyond Scope of Warrant (ECF No. 46).[1] The Government filed a response arguing that Smith's motions should be denied. The Court held an evidentiary hearing on Smith's Motion to Suppress Evidence Seized Beyond Scope of Warrant (ECF No. 62).[2] The parties were given the opportunity to submit additional briefing on both motions, which they did. (ECF Nos. 65 and 66). After careful consideration of the record, the evidence, and the parties' arguments, the Court will deny the Motion to Suppress Evidence Seized Under Warrant Issued Without Probable Cause (ECF No. 45) and grant the Motion to Suppress Evidence Seized Beyond Scope of Warrant (ECF No. 46) for the following reasons.

---

[1] The Court has jurisdiction over the suppression motions under 18 U.S.C. § 3231.

[2] The parties agree that the Court's analysis of Smith's Motion to Suppress Evidence Seized Under Warrant Issued Without Probable Cause (ECF No. 45) should be limited to the information contained in the four corners of the warrant application. (ECF No. 62, pp. 3-4).

1

I.  **MOTION TO SUPPRESS EVIDENCE SEIZED UNDER WARRANT ISSUED WITHOUT PROBABLE CAUSE (ECF NO. 45)**

The Court is cognizant of its limited role, and that the resolution of doubtful or marginal cases should be determined by the preference to be accorded to warrants. Nevertheless, the Court finds that the affidavit of probable cause did not provide the state court judge with a substantial basis on which to conclude that a firearm would be found at 620 Watt, Street Apartment 2. However, the Court holds that good faith exception applies, and it will deny Smith's motion.

A. **Standard of Review**

The Fourth Amendment requires that search warrants be supported by probable cause. U.S. Const. Amend. IV. The probable cause standard for property searches under the Fourth Amendment is well-established. Whether probable cause exists is to be determined by a practical and commonsense approach. *Illinois v. Gates*, 462 U.S. 213 (1983). The appropriate inquiry is "whether, given all the circumstances set forth in the affidavit ... including the [veracity] and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id*. at 238–39. When reviewing a magistrate (or state court judge's) determination of probable cause to issue a warrant, a district court should "[pay] great deference" to the magistrate's decision. *Id*. at 236. This standard means that "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Id*. at 237, n.10. In *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984), the Supreme Court emphasized that a reviewing court is not to conduct a "*de novo* probable cause determination" but is to decide merely "whether the evidence reviewed as a whole provided a substantial basis for the ... finding of probable cause." Such deference, however, "does not mean that reviewing courts should

2

simply rubber stamp a magistrate's conclusion." *United States v. Miknevich*, 638 F.3d 178, 182 (3d Cir. 2011) (citing *United States v. Tehfe*, 722 F.2d 1114, 1117 (3d Cir. 1983)). Rather, the duty of the reviewing court is to "ensure that the state district justice had a 'substantial basis' for concluding that the affidavit supporting the warrant established probable cause." *United States v. Mortimer*, 387 F. App'x 138, 140 (3d Cir. 2005) (citing *United States v. Jones*, 994 F.2d 1051, 1054 (3d Cir. 1993)); *see also United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993) ("Keeping in mind that the task of the issuing magistrate is simply to determine whether there is a fair probability that contraband or evidence of a crime will be found in a particular place, a reviewing court is to uphold the warrant as long as there is a substantial basis for a fair probability that evidence will be found.") (internal quotation marks omitted).

### B. Search Warrant

An Application for Search Warrant and Authorization ("Warrant") was applied for by affiants Pittsburgh Police Detectives Joseph Novakowski and Elvis Duratovic on December 20, 2022, and issued that same day by Allegheny County Court of Common Pleas Judge Kelly E. Bigley. (ECF No. 45-1). The facts set forth in the supporting Affidavit of Probable Cause ("Affidavit") indicate that Smith allegedly possessed a handgun during a domestic incident with his girlfriend on October 29, 2022, at 620 Watt Street, Apartment 2. Smith allegedly fired one bullet that was recovered from the hall closet floor. On October 30, 2022, an arrest warrant for Smith was applied for and issued by Magisterial District Justice Scott [Schricker] (OTN: G 919594-4). The Affidavit states that the affiants (Detectives Novakowski and Duratovic), along with the PBP Fugitive Apprehension Unit ("FAU") and United States Marshals Service ("USMS") Western Pennsylvania Fugitive Task Force ("WPAFTF") "were tasked with locating and safely apprehending Smith." According to the Affidavit, "FAU detectives formulated plans

to conduct surveillance of 620 Watt Street." They then conducted surveillance of 620 Watt Street on December 2, 8, 10-14, 17, and 20, 2022. (ECF No. 45-1).

To the best of the Court's understanding, instead of effectuating the active arrest warrant, law enforcement sought to gain evidence of Smith's possession of the firearm he allegedly used on October 29, 2022. On the aforementioned dates in December, the Affidavit states that the detectives observed Smith exiting the residence, "exhibiting characteristics of an armed person." More specifically: (1) on December 11, 2022, they observed Smith "remove[ ] something from his left side jacket pocket and appeared to place an object toward the center console"; (2) on December 13, 2022, "Detective Duratovic, noticed bulge on left side of Smith['s] jacket. The shape, and weighted appearance of bulge was consistent with outline of concealed firearm. Through his training, experience and multiple firearms arrests Detective Duratovic, recognized this to be consistent with concealed firearm in Montel Smith[']s left jacket pocket," and (3) On December 17, 2022, Smith "was constantly checking his left side of his jacket[ ] as he left and returned to his residence. This is place where Detective Duratovic[ ] observed outline of concealed firearm on Montel Smith person on 12-13-2022."; (4) "On 12-20-2022 at 0816 Montel Smith exited the residence [. . .] appeared to conceal something under seat." (ECF No. 45-1).

The Affidavit concluded that law enforcement "observed a consistent pattern of Montel Smith exiting his residence, consistently wearing similar jacket and clothing, exhibit[ing] characteristics of an armed person [...]." (*Id.*). It went on to state that it was the affiants' observations, training, experience, and knowledge that "armed persons rarely relinquish their firearms." (*Id.*).

4

## C. Analysis

While ideally every affidavit would contain direct evidence linking the place to be searched to the crime, it is well-established that direct evidence is not required for the issuance of a search warrant. Here, the Affidavit relies only on inferences and mere speculation. The Court concurs with Smith that observations of a concealed, but yet-to-be revealed, bulge months after a domestic dispute did not support a reasonable suspicion to conduct an investigatory detention, let alone support probable cause for a search warrant. Considering that Smith was involved in absolutely no criminal activity when the bulge was observed, it could have been any number of non-contraband items. The mere presence of a bulge under Smith's clothing does not amount to proof that he was concealing a firearm on various dates in December 2022. Bulges are susceptible to multiple innocent interpretations, and the Court does not share the affiants' certainty that Smith concealed a semiautomatic firearm on his person on those days. The Court is wary of according the officers' training, expertise, and experience too much significance in the particular circumstances of this case.

Beyond the few observations of a bulge on Smith, the Affidavit contains no facts suggesting that any firearm, specifically the firearm Smith allegedly brandished two months prior, would be found inside of 620 Watt Street. Nothing suggests that the Smith retained the black semiautomatic firearm from October 29, 2022, or returned it to 620 Watt Street. (ECF No. 45-1). The Court concurs with Smith that all the Affidavit contains are observations of Smith "entering' or 'leaving' the building, sometimes with his children; Mr. Smith appearing to place 'something' down before starting his car; or Mr. Smith holding 'an unknown white object' in his hand." (ECF No. 45, p. 8). The Court cannot find that probable cause existed to issue a search

warrant. While law enforcement officers were diligent in their surveillance activities, their investigation did not adduce sufficient evidence substantiating a finding of probable cause.

Though the Court finds that the facts as stated in the Warrant are insufficient to establish probable cause, it does not find that the Warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. The Court holds that the officers executed the Warrant (up until and including the recovery of a firearm) in good faith.

Under the good faith exception to the exclusionary rule, "a court should not suppress evidence seized under a warrant's authority, even if that warrant is subsequently invalidated, unless 'a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" *United States v. Stearn*, 597 F.3d 540, 561 (3d Cir. 2010) (quoting *United States v. Zimmerman*, 277 F.3d 426, 436 (3d Cir. 2002). "Ordinarily, the 'mere existence of a warrant ... suffices to prove that an officer conducted a search in good faith,' and will obviate the need for 'any deep inquiry into reasonableness.'" *Id.* (quoting *United States v. Hodge*, 246 F.3d 301, 308 (3d Cir. 2001)). The United States Court of Appeals for the Third Circuit has announced the following four situations in which an officer's reliance on a warrant would not be reasonable, and would therefore not trigger the exception:

(1) when the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit;

(2) when the magistrate judge abandoned his judicial role and failed to perform his neutral and detached function;

(3) when the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or

(4) when the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

*Id.* (cleaned up).

The fourth exception is the only one Smith can touch upon to obviate the good faith exception – i.e., that "the good faith exception does not apply where the affidavit is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984)). The "threshold for establishing this exception is a high one." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). An affidavit is "so lacking in indicia of probable cause" when it contains nothing more than a bare bones assertion that evidence will be found in the place searched. *Leon*, 468 U.S. at 925. An affidavit is a "bare bones" affidavit where it relies only on an officer's unsupported belief that probable cause exists. *United States v. Pavulak*, 700 F.3d 651, 664 (3d Cir. 2012) (citing *United States v. Ritter*, 416 F.3d 256, 263 (3d Cir. 2005)); *see also Gates*, 462 U.S. at 239 (identifying the affidavits in *Nathanson v. United States*, 290 U.S. 41 (1933), and *Aguilar v. Texas*, 378 U.S. 108 (1964), as "bare bones" affidavits because each contained only an officer's belief that probable cause existed without providing any factual details)).

Here, the Affidavit was not a bare bones document. It did not simply contain Detectives Duratovic and Navakowski's belief that probable cause excited without any supporting facts. It contained information about the detectives' considerable experience and training in investigations and arrests. Both detectives participated in hundreds of undercover operations as well as numerous fugitive investigations. The Affidavit sets forth several factual bases indicative of Smith's criminal behavior and outlined the detectives' surveillance and investigative efforts. It concluded, based on the detectives' knowledge and experience, that Smith had a firearm at 620 Watt Street, Apartment 2. (ECF No. 45-1). A Pennsylvania Court of Common Pleas Judge was called upon to assess facts demonstrating illegal activity by Smith and exercised her judgment in finding probable cause. The officers who executed the Warrant acted reasonably in relying on

the Warrant's authority. The Court finds that the Affidavit was not so lacking that reasonably well-trained officers would have known that it was illegal despite the state court judge's authorization. Thus, Smith's motion (ECF No. 45) will be denied.

## II. MOTION TO SUPPRESS EVIDENCE SEIZED BEYOND SCOPE OF WARRANT (ECF NO. 46)

Smith seeks suppression of (1) a red iPhone 11; (2) any document related to him; and (3) any other items or evidence seized from 620 Watt Street besides the firearm specified in the Warrant. (ECF No. 46). The Government concedes that the cellular telephone was outside the scope of the Warrant, and states that it will not present evidence recovered from it at trial. (ECF No. 52, p. 8). The Court will suppress the cellular telephone as there is no doubt that it was illegally seized. (*See* Government Exhibit 1, at 6:35:00-6:35:20, 6:41:13, and 6:51:50). As to the other seized evidence (i.e., a traffic court document addressed to Smith), the Government is of the opinion that its incriminating nature was immediately apparent such that the Court should deny Smith's motion. The Court disagrees as the search exceeded the scope of the Warrant. Smith's motion will be granted. All evidence seized, except for the firearm, will be suppressed for the following reasons.

### A. Standard of Review

Apart from requiring probable cause, the warrant clause of the Fourth Amendment also unambiguously requires that warrants must particularly describe "the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The particularity requirement not only prevents general searches, but also "assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *United States v. Chadwick*, 433 U.S. 1, 9 (1977) (citation omitted). "If the scope of the search exceeds that permitted by the terms of a validly issued warrant or the

8

character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional without more." *Horton v. California*, 496 U.S. 128, 140 (1990). "Whether evidence is within a search 'scope requires not a 'hypertechnical' analysis, but a 'common-sense, and realistic' one." *United States v. Okorie*, 425 F. App'x 166, 169 n. 1 (3d Cir. 2011) (citation omitted).

**B. Factual Background**

The Warrant for 620 Watt Street identified the only "items to be searched for and seized" as the "Person of Montel Smith, black male, with a date of birth of 01-18-1993" and a "black medium seized [sic] semi-automatic firearm." (ECF No. 45-1). At the evidentiary hearing, video footage was admitted from two officers' body cameras as Government Exhibit 1.[3] The Court has carefully reviewed that footage as well as the testimony of two officers and has reached the following findings of fact.[4]

The search commenced at 6:00 a.m. on December 22, 2022. (ECF No. 62, pp. 11-13). Smith adhered to the officers' directives given on a megaphone and exited the residence before the search began. (*Id.* at 22). Shortly after 6:43 a.m., a black semiautomatic firearm was located inside a teal bin that contained a hairdryer and other hair accessories. The teal bin was inside of a white laundry hamper that was retrieved from a closet in a bedroom where children were sleeping on a bed. (*Id.* at 13-14, 23-24, 28; Government Exhibit 1, Axon_Body_3_Video_2022-12-22_0606_X6039C2HU ("Body Cam A") at 6:43:13); Government Exhibit 1, Axon_Body_3_Video_2022-12-22_0619_X6039C14M ("Body Cam B") at 6:43:00-12).

---

[3] Government Exhibit 1 contains three separate files of body cam footage.

[4] When ruling on a suppression motion, the Court takes on the role of fact finder and thus "is responsible for assessing the credibility of the testifying witnesses, weighing the evidence, and reaching any 'inferences, deductions and conclusions to be drawn from the evidence.'" *United States v. Cole*, 425 F. Supp. 3d 468, 473 (W.D. Pa. 2019) (quoting *United States v. Harris*, 884 F. Supp. 2d 383, 387 n.2 (W.D. Pa. 2012)).

Detective Michael Lafferty ("Detective Lafferty") mainly searched the bedroom. (ECF No. 62, p. 35; Body Cam B). He knew that he was authorized to search and seize a black medium-size semiautomatic firearm. (*Id.* at 40, 43-44). Detective Lafferty moved a white laundry basket with a teal bin inside out of the closet and gave it to other officers to search. (*Id.* at 33-37). Detective Andrew Miller ("Detective Miller") found the firearm. (Body Cam B at 6:43:00-12). Detective Lafferty believed it was the firearm described in the warrant, but without ballistic testing there was no way to know for certain. (ECF No. 62 at 37-38).

After the firearm was rendered safe, officers stood in the hallway waiting for direction as to how to proceed. (*Id.* at 26; Body Cam B at 6:43-31-6:47:37). Detective Miller was well aware that they were authorized to search and seize a black medium-size semiautomatic firearm. (ECF No. 62, p. 21). However, he postulated that in his "experience where's there's one [firearm], there's usually two." (*Id.* at 15); (Body Cam at 6:46:31-33). He wanted to keep searching. (ECF No. 62, p. 16). There was a discussion between Detective Miller and other officers about whether they could continue to search. One officer said that they had to stop searching and that anything else found could be suppressed. (*Id.* at 41, 44-5). But Detective Miller said, "let's keep searching," and he went back to the bedroom at approximately 6:47 a.m. He pointed out bags and baskets that had not yet been searched and stated that he wanted to search under the mattress. A court document for Smith was recovered from the bottom of the white laundry hamper by Detective Miller, which was where the firearm was retrieved. Detective Miller took the court document to the kitchen, and then brought other officers into the bedroom to explain where he found the court document. (*Id.* at 17, 25-29; Body Cam B at 6:47:27-6:49:17; Body Cam A at 6:47:50).

10

In the kitchen, Detective Novakowski said to Detective Lafferty, "We already got muddied right now, so we gotta stop searching … He said on camera 'that's the one.' … That [gun is] what she described? … Ok, then we definitely have to stop. … Then we've got to stop searching. Anything else that we find… they might even suppress that already[.]" (Body Cam A at 6:49:46-6:51:19). Meanwhile, the officers' supervisor, Sergeant Lukitsch, came into the bedroom where Detective Miller was continuing to search and said they had the item in the Warrant, and they were done. When Detective Miller asked if they should search for other firearms, Sergeant Lukitsch said he should not be searching because the item identified in the Warrant had been found. (ECF No. 62, p. 30; Body Cam B, 6:50:10-6:50:23).

**C. Analysis**

If the scope of a search "exceeds that permitted by the terms of a validly issued warrant," the subsequent seizure of the items discovered is unconstitutional. *Horton*, 496 U.S. at 140. Here, the officers execution of the Warrant went beyond what the Warrant permitted and, thus, ran afoul of the Fourth Amendment's prohibition of unreasonable searches. After seizing the firearm, the search should have ended. The Court believes, after viewing the video evidence, that the majority of the officers involved knew that recovery of the firearm meant the search was over. It finds Detective Miller's proffered reason for continuing with a search – i.e., that there may be other firearms – completely unreasonable in the context of the Warrant. The inability to immediately positively identify the recovered firearm as the one brandished by Smith on October 29, 2022, did not justify a continued search.

The Court finds that the Government's argument – i.e., "requiring that the police must stop searching after their recovery of one item listed in the affidavit is impractical and comes at a great societal cost" (ECF No. 65, p. 5) – does not stand up to the particular circumstances of this

case. The Warrant authorized a search for one firearm. That is what was found. Absolutely no evidence was presented that stopping the search was impractical. In fact, all the involved officers stopped searching upon the recovery of the firearm. Detective Miller then chose to resume searching, and he enlisted other officers to go back into the bedroom to continue to search. Furthermore, the Government's argument that the incriminating nature of the court document was immediately apparent is meritless as the officers should not have been searching once they located the firearm.

The Court is not persuaded by the Government's invocation of the good faith exception to what occurred after the seizure of the firearm. (ECF No. 65, pp. 6-7). It is well aware that "[t]he fact that a Fourth Amendment violation occurred—i.e., that a search or arrest was unreasonable—does not necessarily mean that the exclusionary rule applies." *Herring v. United States*, 555 U.S. 135, 140 (2009) (citing *Gates*, 462 U.S. at 233). Officers acting in good faith must have "a reasonable knowledge of what the law prohibits." *Stearn*, 597 F.3d at 561-62 (quoting *United States v. Zimmerman*, 277 F.3d 426, 438 (3d Cir. 2002)). "To trigger the exclusionary rule, law enforcement conduct must be 'deliberate, reckless, or grossly negligent,' or involve 'recurring or systemic negligence.'" *United States v. Caesar*, 2 F.4th 160, 169–70 (3d Cir. 2021) (quoting *Herring*, 555 U.S. at 143–44).

Unlike those cases in which police rely in good faith on authority ostensibly permitting their conduct, application of the exclusionary rule here serves its purpose by deterring unconstitutional behavior. There is no good faith for police who deliberately do not act in accordance with the law. It was completely unreasonable for some of the officers (e.g., Detective Miller) to conclude that the search could continue when the one and only identified object in the Warrant – a firearm – had been recovered. At a minimum, their conduct was

grossly negligent. Unquestionably, some of the officers exceeded the scope of the authority conferred by the Warrant, and it is abundantly evident in the video evidence that most of the officers knew that continuing the search was illegal. No objectively reasonable police officer could believe that, despite the limited nature of the Warrant, they could continue searching the residence.

The unreasonable search and seizure after recovery of the firearm triggers the exclusionary rule. All evidence obtained as a result of this illegal search and seizure must be suppressed. Doing so advances the privacy interests that are the foundation of the Fourth Amendment, and deters reckless police conduct in the execution of search warrants. Smith's motion will be granted; all seized evidence except for the firearm will be suppressed.

### III.   CONCLUSION

For these reasons of law and fact, the Motion to Suppress Evidence Seized Under Warrant Issued Without Probable Cause (ECF No. 45) will be denied and the Motion to Suppress Evidence Seized Beyond Scope of Warrant (ECF No. 46) will be granted. An Order of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

1/12/24
Date